# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Parole of REX EDWIN LAYMAN.

---

MONROE COUNTY PROSECUTOR,

      Appellee,

v

REX EDWIN LAYMAN,

      Appellant,

and

PAROLE BOARD,

      Intervenor-Appellee.

UNPUBLISHED
September 20, 2018

No. 341112
Monroe Circuit Court
LC No. 17-139920-AP

---

Before: M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Appellant, Rex Layman, appeals by leave granted[1] the circuit court order reversing a decision by the Michigan Parole Board granting Layman parole. For the reasons stated in this opinion, we reverse.

## I. BASIC FACTS

In 1998, Layman pleaded guilty to two counts of first-degree criminal sexual conduct. He admitted to exposing himself to numerous young girls in his neighborhood, to luring girls to his home, and to showing them pornographic videos and images. On one occasion, while two young girls were in his home, Layman made the girls remove their clothes before orally

---

[1] Layman's application for leave to appeal was originally denied by this Court, but he applied for leave to appeal to the Michigan Supreme Court, which remanded to this Court "for consideration as on leave granted." *In re Parole of Layman*, 501 Mich 1034 (2018).

-1-

penetrating them and forcing them to touch his penis. He was sentenced to 8 to 30 years' imprisonment, and became eligible for parole on April 23, 2004. Layman was subsequently denied parole on multiple occasions. In 2009 and 2011, the Board granted parole before rescinding the order at the request of the prosecution. In 2013 the Board granted parole again, but its decision was reversed by the circuit court after the prosecution appealed. In 2015, the Board denied parole citing a November 18, 2015 Qualified Mental Health Professional Evaluation (QMHPE), which indicated that Layman's "deviant sexual preference" remained a "significant clinical concern."

Yet, on April 19, 2017, the Board decided to grant parole. The prosecution appealed the decision to the circuit court, asserting that the Board abused its discretion by granting parole because (1) it failed to consider all the facts and circumstances, and (2) the grant of parole required Layman to participate in a residential sex offender treatment program, which contradicted the statutory requirement that the Board be reasonably assured *prior* to parole that prisoners will not pose a threat to society or public safety. The circuit court agreed, holding that the Board's 2017 grant of parole contradicted its 2015 denial of parole because there was no evidence that the concerns raised in 2015 had been remedied. Additionally, the court held that requiring Layman to participate in sex offender treatment *after* being paroled conflicted with the requirement that prisoners shall not be paroled without reasonable assurances that they will not become menaces to society or public safety.

## II. PAROLE DECISION

### A. STANDARD OF REVIEW

" 'Judicial review of the Board's decision to grant parole is limited to the abuse-of-discretion standard.' " *In re Parole of Spears*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 340914); slip op at 3, quoting *In re Parole of Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011). "[T]he challenging party has the burden to show either that the Board's decision was 'a clear abuse of discretion' or was 'in violation of the Michigan Constitution, a statute, an administrative rule, or a written agency regulation.' " *Elias*, 294 Mich App at 538 (quotation marks and citation omitted); MCR 7.118(H)(3). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*.

### B. ANALYSIS

"[M]atters of parole lie solely within the broad discretion of the [Board] . . . ." *Id*. at 521 (quotation marks and citations omitted; second alteration in original). "Importantly, a reviewing court may not substitute its judgment for that of the Board." *Id*. at 538-539; see also *Morales v Mich Parole Bd*, 260 Mich App 29, 48; 676 NW2d 221 (2003). Despite the discretion afforded it, however, the Board is constrained by MCL 791.233(1)(a), which provides that "[a] prisoner must not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." " 'An evaluation of a prisoner's mental and social attitude involves a subjective determination for which the parole guidelines cannot account.' " *Elias*, 294 Mich App at 543, quoting *Killebrew v Dep't of*

*Corrections*, 237 Mich App 650, 655; 604 NW2d 696 (1999). The Board's discretion is also limited by MCL 791.233e, which provides, in pertinent part:

> (1) The department shall develop parole guidelines that are consistent with section 33(1)(a) and that shall govern the exercise of the parole board's discretion pursuant to sections 34 and 35 as to the release of prisoners on parole under this act. The purpose of the parole guidelines shall be to assist the parole board in making release decisions that enhance the public safety.
>
> (2) In developing the parole guidelines, the department shall consider factors including, but not limited to, the following:
>
> (a) The offense for which the prisoner is incarcerated at the time of parole consideration.
>
> (b) The prisoner's institutional program performance.
>
> (c) The prisoner's institutional conduct.
>
> (d) The prisoner's prior criminal record. As used in this subdivision, 'prior criminal record' means the recorded criminal history of a prisoner, including all misdemeanor and felony convictions, probation violations, juvenile adjudications for acts that would have been crimes if committed by an adult, parole failures, and delayed sentences.
>
> (e) Other relevant factors as determined by the department, if not otherwise prohibited by law.
>
> (3) In developing the parole guidelines, the department may consider both of the following factors:
>
> (a) The prisoner's statistical risk screening.
>
> (b) The prisoner's age.
>
> * * *
>
> (6) The parole board may depart from the guideline by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. A departure under this subsection shall be for substantial and compelling reasons stated in writing. The parole board shall not use a prisoner's gender, race, ethnicity, alienage, national origin, or religion to depart from the recommended parole guidelines.

A "substantial and compelling reason" is "an objective and verifiable reason that keenly or irresistibly grabs our attention; is of considerable worth in deciding the length of a sentence; and exists only in exceptional cases." *Elias*, 294 Mich at 542 (quotation marks and citation omitted).

The trial court first concluded that the Board abused its discretion by granting Layman parole without considering all of the relevant facts and circumstances. Specifically, in 2015, the Board denied parole based upon a QMHPE which indicated that Layman's deviant sexual preferences were a "significant clinical concern." The Board at that time noted: "A recent psych assessment revealed that deviant sexual preference remain[ed] a significant clinical concern. Reasonable assurance is not present at this time." When the Board granted parole on April 19, 2017, it did so without clarifying why Layman's deviant sexual preferences were no longer a significant clinical concern, leading the circuit court to reverse the grant of parole. In doing so, the court stated that "[n]othing in the record shows that this concern has been effectively addressed."

On appeal, Layman contends that the circuit court's conclusion was erroneous because the court took it upon itself to resolve conflicts in the evidence rather than leave that task to the Board. The Parole Board does not abuse its discretion simply because it reached "a different result based on the same evidence placed before previous panels." *Id*. at 546. Further, "there is no abuse of discretion when a court or fact-finder is faced with conflicting information and makes a reasonable and principled decision regarding which side to believe." *Id*. Here, the record reflects that the 2015 QMHPE that listed Layman's deviant sexual preference as a concern was referring to a dynamic sex offender instrument used to determine the likelihood of a particular individual reoffending—the STABLE-2007 (STABLE). The STABLE instrument scores 13 areas considered to be associated with sexual reoffending on a scale of zero to two and then adds the score for each area to come up with an overall score that suggests an individual's likelihood of reoffending. The 13 areas include: social influences, capacity for relationship stability, emotional identification with children, hostility towards women, general social loneliness, lack of concern for others, impulsive acts, poor cognitive problem solving, negative emotionality and hostility, sexual drive and preoccupation, sex as coping, deviant sexual interests, and cooperation with treatment and supervision. Layman's assessment indicated "some concern" with his capacity for relationship stability and with his sexual drive and preoccupation, and "clinically significant concerns" with regard to his deviant sexual interests.

In evaluating the latter, the physician who administered the evaluation noted: "[Layman's] victims were eight and nine years old. Exposure was part of his offense and he likewise reported exposing himself to other girls about the same age just prior to his current offense." Despite Layman's deviant sexual interests raising concern, the physician noted that, overall:

> [Layman] was scored as a **Moderate** on the STABLE-2007 and a **Low** on the STATIC-99R. When these measures are combined, his composite assessment places him in the **Low** priority category for supervision and intervention in comparison to other sexual offenders assessed using these measures.

While a panel of the Board in 2015 found the deviant sexual preferences described in Layman's 2015 QMHPE significant enough that it did not have reasonable assurances to parole Layman, the 2017 panel that chose to parole Layman reached a different conclusion based on the same

-4-

evidence.[2]  In other words, the QMHPE supports both the 2015 Board's decision *and the 2017 Board's decision.*

The trial court was tasked with determining whether the 2017 decision constituted an abuse of discretion.  In doing so, it substituted its judgment for that of the 2017 Board, despite the fact that the QMHPE resulted in an overall "**low** priority category for supervision and intervention in comparison to other sexual offenders assessed using [the STABLE-2007 and STATIC-99R] measures."  Again, it is not an abuse of discretion for the Parole Board to arrive at a different conclusion in 2017 than in 2015 based upon the same QMHPE.  See *Elias*, 294 Mich App at 546 (explaining that even where there is conflicting evidence, so long as evidence exists to support a fact, "the Board [does] not abuse its discretion by granting parole based on that evidence").

The trial court next concluded that under *In re Parole of Cehaich*, unpublished per curiam opinion of the Court of Appeals, issued October 1, 2013 (Docket No. 312386), the Board abused its discretion by requiring Layman to undergo sex offender therapy outside of prison because the requirement evidences that the Board was not reasonably assured that he would not reoffend.  In *Cehaich*, this Court held that the Board abused its discretion when it required a defendant to receive sex offender therapy after being paroled because the requirement conflicted with the statutory requirement that a prisoner shall not be given liberty until there are reasonable assurances he will not become a menace to the society or to the public safety.  *Id*. at pp 4-5.  However, *Cehaich* is not binding on this Court, MCR 7.215(C)(1), and we do not find it persuasive.

In *Cehaich*, this Court took issue with the Board's decision to provide for sex offender treatment *through* parole as opposed to *before* parole.  *Cehaich*, unpub op at 4-5.  The defendant had undergone *no* sex offender treatment while incarcerated.  *Id*. at 2.  In contrast, Layman completed sex offender therapy while in prison[3] and there is no reason that requiring Layman to participate in additional therapy automatically means that the Board lacked reasonable assurance that Layman would not be a menace to society or public safety.  The circuit court substituted its judgment for that of the Board when it found that requiring therapy subsequent to parole necessarily implies that the Board lacks reasonable assurance that a prisoner will not reoffend, even in light of the fact that the parole guidelines' scoresheet completed prior to Layman's

---

[2] The Board contends that the original panel lacked "a sufficient understanding concerning the STABLE instrument," because, with regard to Layman, "deviant sexual interest as a dynamic risk factor using the STABLE instrument cannot be improved upon while in prison."  That is, because of the crimes for which Layman pleaded guilty, and so long as he remains in prison, he will always score a two in the area of deviant sexual interest, which will always raise a "significant clinical concern."

[3] Although the circuit court stated in its opinion that Layman had not completed necessary sex offender treatment prior to parole, his central file is littered with references to his *completion* of sex offender treatment.

parole indicating a high probability of parole.[4]  See *In re Parole of Haeger*, 294 Mich App 549, 571; 813 NW2d 313 (2011) ("[A] reviewing court may not substitute its judgment for that of the Board.").[5]

Finally, we note that the prosecution relies heavily on past statements of Layman, many of which are disconcerting and disturbing.  Nevertheless, because there is no indication that either the Parole Board or the circuit court considered those statements, all of which were before 2008, we decline to use them as a basis for concluding that the Board abused its discretion by granting Layman parole.  Relying on those statements to find an abuse of discretion would, ultimately, involve improperly substituting the reviewing court's view of the evidence for that of the Parole Board.  See *Spears*, ___ Mich App at ___; slip op at 3.

### III.  CONCLUSION

In sum, the Board did not abuse its discretion when it granted Layman parole because facts existed to support the conclusion that he would not be a menace to society or public safety upon release.  Additionally, the trial court's conclusion that requiring additional treatment as a condition of parole by itself constitutes a violation of MCL 791.233(1)(a) is not supported by law or reason—the Board may both require additional treatment *and* be reasonably assured that a prisoner will not pose a menace to society or public safety.

Reversed and remanded for reinstatement of the order granting parole.  We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood

---

[4] Notably, and although the circuit court failed to address this issue, because Layman's score placed him "in the high-probability-of-parole category, the Board was *required* to grant parole unless it found 'substantial and compelling reasons' to deny." *Elias*, 294 Mich App at 542 (emphasis added).

[5] The circuit court also reversed the decision to grant parole based on its determination that the Board failed to prepare a meaningful and current Transition Accountability Plan (TAP).  In *Spears*, however, this Court concluded "[t]he closest this Court has come to articulating any standard relating to a TAP for a potential parolee is that a TAP, among other relevant documents, must be considered by the Board before granting or denying parole." *Id.*, citing *In re Parole of Haeger*, 294 Mich App 549; 813 NW2d 313 (2011).  A TAP is not necessarily a singular document, but a series of documents and forms related to a defendant's needs, goals, and goal-oriented tasks, and the Board fulfills its obligations by preparing and reviewing *a* TAP. *Spears*, ___ Mich App at ___; slip op at 4-5.  Accordingly, because *a* TAP was prepared for Layman and reviewed by the Board, the circuit court erred by reversing on the basis that a "meaningful and current TAP" was not prepared.